NATHANIEL C. BUSHEE vs. WILLIAM P. FREEBORN, Administrator.

Legacy to testator's wife of four shares in the W. Manuf. Co. for her life, with gift over after her death, of one share each to five special legatees, three of whom were also residuary legatees. Pending the life estate the directors of the W. Company doubled the number of shares of capital stock, allotting one share of new stock to each share of old on payment of $750. Before this issue of new stock a share was worth from $2,500 to $3,000; after it, a share was worth from $1,800 to $1,900. On a bill in equity brought by one of the special legatees against the administrator, who had taken four new shares and paid for them out of the estate: —

*Held*, as between special and residuary legatees, that the special legatee was entitled to so much of the value of the new share as grew out of the accumulated profit, to be ascertained, if necessary, by a master.

*Held*, further, that on payment by the special legatee of all the money paid by the administrator for a new share, the special legatee could have a share transferred to him.

*Held*, further, that as to the fifth share given to the fifth special legatee, he was entitled to the value of a share or its equivalent in money, calculated on the value of the stock at the time the testator gave it.

*Semble*, that in the present case any other construction would allow the directors of the W. Company to alter the testator's will.

BILL IN EQUITY to determine the respective rights of the legatees of James Coffin. The facts as found by the court are stated in its opinion.

*B. N. & S. S. Lapham*, for complainant, cited *Rand* v. *Hubbell*, 115 Mass. 461; *Gifford* v. *Thompson*, 115 Mass. 478.

*George H. Browne*, for respondent.

*June* 22, 1875. POTTER, J. This case was heard upon the bill and answer, and some oral evidence.

It appears that the testator, Coffin, bequeathed to his wife, for life, the income and dividends of four shares of the capital stock of the Warren Manufacturing Company; that, on her decease, he gave one share of said stock to the complainant, and to four other persons one share each, — thus giving away, on her death, one share more than he had given her for life. Three of these special legatees were also residuary legatees in his will.

After his decease, but during the life of the wife, the directors, in July, 1872, voted to increase the capital stock to double the number of shares, making 600 in all; and to allow to every owner of old stock one share of new for every share of old stock owned by him, on payment of $750 per share. It is claimed

that the old stock before this was worth $3,000 per share ; and it is testified that it sold for from $2,500 to $3,000 per share, and after the new issue, each share was worth from $1,800 to $1,900. The administrator purchased four new shares for the old shares, and made the required payments out of the estate.

·The increase of capital, it is testified, was for the purpose of building an additional mill.

The wife having died, the complainant files this bill, and claims to have one of said new shares transferred to him, on his refunding to the administrator the money advanced by him.

The administrator testifies that he took four shares of the new stock. He denies that he took it for the benefit of the complainant, or special legatees ; but alleges that he took one share to make up the number of five given away in the will, and claims that the other shares belong to the residuary legatees.

The treasurer of the corporation testifies, that before the increase of July 2, 1872, the capital consisted of 300 shares, of $1,000 each ; that their surplus stood at $638,770 ; but that their profits above their outlays were about $400,000.

In July, 1872, they doubled the number of shares, the holders of the old shares to be entitled to one of the new ones for every old one, on paying $750 ; and that the value of the shares, after this increase, was between $1,800 and $1,900.

What was the intention of the testator ? for this is one guide if ascertained.

We think it is evident that, when speaking of a share of stock, he intended to speak of the shares as he knew them, as they existed·at the time he was making his will.

As the stock then stood, he knew that in giving a share he was giving one three hundredth part of the corporate property. As the directors have altered it, a share is now only one six hundredth part of the property.

The value of a share of stock is, of course, liable to appreciate or depreciate. The directors may manage well, or they may mismanage. They may be fortunate or unfortunate, and the value, and the income from it, may vary accordingly. The donee takes subject to this chance of gain or loss, in the same manner the donor would have held it himself.

But to hold that the directors could, in such a case, arbitrarily change the value of the shares, would be to hold that they could alter the testator's will, or make a will for him. See remarks of Bacon, V. C., in *Lean* v. *Lean*, 23 Weekly Reporter, 484.

There may be reason in reserving a portion of profits, as a safeguard against losses; this would in fact be a sort of insurance; but to hold that they have a right beyond this to let profits accumulate, and create new stock out of it, would be, in the present case, to hold that they have a right to take a considerable portion of the value of the stock given to the complainant, and give it to the residuary legatee. It would be to leave the legatees at the mercy of the directors, which the testator could never have anticipated or intended; and we think it would be a dangerous rule of construction.

If, after the making of the will, the capital had been increased, and the testator in his lifetime had taken the new shares, it would have presented a different case.

In the present case, the directors, instead of dividing, accumulated the profits; and wishing to build an additional mill, created new stock, for which the purchaser was to pay $750, and this new stock was immediately worth about $1,850. All the additional value over the cash paid was, of course, derived from its sharing in the advantages of the organization, and an established business, and in the profits already made, — all of which had belonged to the old stock.

Where a person owns the entire interest in a share, it would make no difference to him, if able to pay the advance required. But where there are successive interests, it is easy to see that gross injustice might be done.

So, also, in case of a person in embarrassed circumstances, or a minor who has no friends to assist him in raising the amount required to obtain the new share.

We think, therefore, the special legatee is entitled, as against the residuary legatee, to so much of the value of the new share as grew out of the accumulated profit belonging to the old shares. This can be ascertained by reference to a master, which may, in such cases, involve trouble and expense, but is better than to suffer injustice. But if the special legatee is willing to repay to the administrator the whole of the money he has advanced, then,

on payment of the proper amount, the special legatee should have the new share transferred to him.

No question has been made, in this suit, as to the right of the life tenant to any portion of these accumulated profits; and we have decided only the case as brought before us, between the special and the residuary legatees.

The testator gave four shares of this stock to his wife for life, and on her death he gave to five different persons each one share.

It is evident, from the whole context, that he supposed he was giving away the same stock he had given to his wife, but mistook the number of shares, and that he intended that each of them should have a share on her decease. Thus he gave away one share more than he owned.

We think that in estimating the value of the share, or its equivalent in money, to which the fifth donee would be entitled as against the residuary legatee, we are, as in the former case, to be guided by the condition of the stock at the time the testator gave it. See *In re Woodruff's Estate*, 1 Tucker, Surrogate Rep. 58; *Wiltbank's Appeal*, 64 Pa. St. 256; *In re Hopkins's Trusts*, 22 Weekly Reporter, 687; *Dale* v. *Hayes*, by Vice Ch. Stuart, A. D. 1871, 19 Weekly Reporter, 299; see also *Thursby* v. *Thursby*, 23 Weekly Reporter, which was a question of bequest of income.

*Decree accordingly.*